**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

LINDA HOLT,            )
                             )
           **Petitioner,**    )
                             )
     **v.**                 )      **No. CIV-12-1032-W**
                             )
**MILLICENT NEWTON-EMBRY,**   )
                             )
          **Respondent.**   )

## REPORT AND RECOMMENDATION

Petitioner Linda Holt, a state prisoner appearing *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, ECF No. 1 (Petition), and a Support Brief for Writ of Habeas Corpus, ECF No. 2 (Petitioner's Brief), challenging the constitutionality of her state court conviction. Respondent has filed her Response to Petition for Writ of Habeas Corpus, ECF No. 13 (Response), and Petitioner has replied, ECF No. 16. For the reasons set forth below, it is recommended that the Petition be **DENIED**.

## I.    Relevant Case History and Issues Presented

On April 21, 2010, Petitioner was convicted after a jury trial in the District Court of Beckham County, State of Oklahoma, Case No. CF-09-270A, of Trafficking in Illegal Drugs (marijuana) in violation of Okla. Stat.

tit. 63, § 2-415. Petitioner was sentenced to fifty years imprisonment and fined $100,000.

Petitioner appealed her conviction and sentence to the Oklahoma Court of Criminal Appeals (OCCA) (*See* Response Ex. 4 (Summary Opinion of the OCCA)). The OCCA affirmed Petitioner's conviction and sentence on October 13, 2011 (*id.*).

Petitioner then timely filed this habeas action raising the same six grounds for relief she presented to the OCCA: (1) whether evidence admitted at trial after having been obtained during an allegedly illegal search and seizure violated Petitioner's rights under the Fourth Amendment of the United States Constitution and Article II, Section 30 of the Oklahoma Constitution; (2) whether the evidence presented at trial was sufficient to support the jury's verdict; (3) whether Petitioner's rights to due process and a fair trial were violated by the admission of "bad character evidence" in violation of the Fifth and Fourteenth Amendments to the United States Constitution; (4) whether the trial court committed fundamental error by failing to instruct the jury that Petitioner would be ineligible for earned credits during her incarceration; (5) whether Petitioner's sentence was excessive; and (6) whether cumulative error

deprived Petitioner of due process (Response Ex. 4 at 1-2). The OCCA affirmed Petitioner's conviction and sentence.

## II.    The Evidence Presented at the Trial

On August 20, 2009, Oklahoma Highway Patrol Trooper Michael Rodriguez, accompanied by his drug dog, was monitoring eastbound traffic from the center median of Interstate 40 in Beckham County, Oklahoma. Driving a rental car, Petitioner passed his post. Petitioner was driving under the speed limit. Rodriguez described Petitioner as looking like a "deer in the headlight." Petitioner's hands were on the steering wheel at the "10 and 2" position (Transcript of Proceedings in the Beckham County Court, Case No. CF-2009-270A (herein after "TR.") at 237-238).

Rodriguez followed Petitioner as she signaled and exited the highway. He stopped directly behind Petitioner's vehicle at a stop sign where the exit ramp intersected a road which passed under I-40. Petitioner signaled that she was turning left, but rather than turning left, she drove straight ahead on the ramp leading back to I-40 east (TR. 238-241). Rodriguez activated his lights and stopped Petitioner's car, signaled for Petitioner to meet him between the two cars, and explained to her that she had made an unsafe lane change (TR. 239-244). Two

passengers were with Petitioner. They were later identified as Petitioner's niece, Ariele Walker, and her cousin, Tommascene Robinson. Rodriguez had Petitioner sit with him in his patrol car, telling her that he was going to issue a warning for the unsafe lane change rather than a ticket (TR. 243-244). In response to Rodriguez's questions, Petitioner stated that she and her two passengers were on their way to Ohio to take Walker to college. Petitioner told Rodriguez that the car she had been driving was a rental car and that the rental agreement was in the glove compartment (TR. 244-245). Rodriguez left Petitioner in the patrol car while he walked to the rental car and asked Robinson, who was sitting in the front passenger seat, for the rental agreement. Robinson gave Rodriguez papers that turned out to be at least three different rental agreements. Robinson avoided eye contact with Rodriguez. In response to Rodriguez's question as to where the three were headed, Robinson remained silent, but Walker answered from the back seat, "Michigan" (TR. 245-248, 372).

Rodriguez returned to the patrol car and began searching for warrants for Walker and Robinson. While waiting for the information, Rodriguez took his drug dog out of the patrol car and walked with the dog around the rental car. The drug dog indicated that he had detected narcotics on the driver's side back quarter panel of the vehicle (TR. 248-

249, 309). Rodriguez contacted his partner who arrived to help search the rental car. During the search, the officers found brick sized bundles of marijuana wrapped in green cellophane and baggies packed in several pieces of luggage and a purple sleeping bag (TR. 253). All together, the officers found 19 bundles of what later tested positive for marijuana, weighing a total of 52.7 pounds (TR. 279-280, 331, 482-496).

Walker and Robinson testified for the State in return for a reduction of the charges against them from trafficking to possession (TR. 380-381, 415). Their testimony implicated Petitioner in the drug trafficking scheme.

## III.   Standard of Review

The six propositions of error raised by Petitioner are properly exhausted and subject to review under the standards set forth in the Anti-terrorism and Effective Death Penalty act of 1996 (AEDPA). Under AEDPA, this Court may grant a Petitioner habeas relief only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

§2254(d)(1)-(2). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004)("[W]e defer to the [state court's] decision unless we conclude that its result--not its rationale--is 'legally or factually unreasonable'").

Whether the law is clearly established is a threshold inquiry. *See House v. Hatch*, 527 F.3d 1010, 1017-1018 (10th Cir. 2008). The absence of clearly established federal law is dispositive of the §2254(d)(1) analysis. *Id.* at 1017. Thus, only if the court determines that the law is clearly established does it proceed to determine whether the state court decision is either contrary to or an unreasonable application of that law. *Id.* at 1018.

A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but arrives at a different result. *Williams v. Taylor*, 529 U. S. 362, 405-406 (2000). "A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme Court.]" *Thaler v. Haynes*, 531 U.S. 43, 47 (2010).

A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts in the Petitioner's case. *Williams*, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.

## III. Analysis

### A. Ground One: Petitioner's Fourth Amendment Claim

Petitioner challenges the admission of evidence obtained as a result of the search of her vehicle. First, Petitioner contends that Rodriquez did not have probable cause to believe that she had committed a traffic violation by effecting an unsafe lane change. Second, Petitioner contends that even if the original stop were valid, the detention was unjustly prolonged. Finally, Petitioner contends that Rodriguez had no reasonable suspicion of criminal activity sufficient to justify the use of the drug dog to detect the marijuana in her vehicle (Petition at 3-10).

Respondent correctly contends that Petitioner's first ground for relief is not cognizable in a federal habeas action.

This Court is barred from reaching the merits of Petitioner's first ground for relief by the holding in *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Supreme Court held that a state prisoner may not be granted federal habeas relief on a Fourth Amendment claim if the State had "provided an opportunity for full and fair litigation" of the Petitioner's Fourth Amendment claims. *Matthews v. Workman*, 577 F.3d 1175, 1194 (10th Cir. 2009) (*quoting Stone*, 428 U.S. at 494).

In this case, Petitioner's trial counsel filed a motion to suppress the evidence obtained as a result of the search of Petitioner's vehicle (Response Ex. 5) The trial court heard arguments and overruled the motion on January 20, 2010 (Response, Ex. 6 at 29).

The issue was raised again before the OCCA on direct appeal. The OCCA considered and rejected Petitioner's claims on the merits (Response, Ex. 4 at 2-3). Because Petitioner was afforded a full and fair opportunity to litigate this issue before the state courts, Petitioner's first ground for relief is not cognizable in this habeas action.

**B.      Ground Two: Sufficiency of the Evidence**

Petitioner also challenges the sufficiency of the evidence supporting her conviction for trafficking. Specifically, Petitioner contends that the State failed to prove beyond a reasonable doubt that the marijuana weighed twenty-five pounds or more – the weight necessary to prove trafficking under Oklahoma Law. She contends that the chain of custody was insufficient to demonstrate that the marijuana tested by the Oklahoma State Bureau of Investigation was the same marijuana seized from her trunk. Finally, Petitioner contends that the evidence was insufficient to prove that she "knowingly" possessed the marijuana found in the rental vehicle she was driving.

The standard a state court must apply when reviewing a claim challenging the sufficiency of the evidence is clearly established in *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." But it is not necessary or appropriate for this court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 319 (internal quotation and citation omitted). The relevant

question is whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* If a defendant is found guilty of the crime charged, the jury's role as fact finder and weigher of the evidence is preserved "through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." *Id.*

Under AEDPA, this Court must decide whether the OCCA's finding that there was sufficient evidence to support a jury's guilty verdict was contrary to or an unreasonable application of *Jackson*. *See* 28 U.S.C. § 2254(d)(1); *Spears v. Mullin*, 343 F.3d 1215, 1238-39 (10th Cir. 2003). The Supreme Court recently reiterated the difficulty a habeas Petitioner faces when asserting a ground for relief based on alleged insufficiency of the evidence:

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions

should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable'

*Coleman v. Johnson*, ___ U.S. ___, 132 S.Ct. 2060, 2062 (2012) (internal quotations and citations omitted).

Under Oklahoma law, the elements of the crime of drug of trafficking are knowingly, possessing twenty-five or more pounds of marijuana. *See* Okla. Stat. tit. 63, § 2-415.

### 1.    Proof of Weight

Petitioner contends that the State did not sufficiently prove the weight of the marijuana seized from her rental cars because the OSBI chemist testified at trial that she had weighed the nineteen bricks of marijuana individually without separating them from the cellophane and baggies in which they were wrapped (Petition at 11). The nineteen bricks of marijuana were introduced as evidence and displayed to the jury (TR. 482-497). The jury was able to see the marijuana and its packaging. Common sense dictates that the plastic bags and cellophane in which the

nineteen, 2-pound bricks of marijuana were wrapped could not have weighed enough to lessen Petitioner's crime from trafficking to mere possession. *See Sharp v. Ward*, 2006 WL 2251716 (N.D. Okla. Aug. 4, 2006) (jury could evaluate the weight of marijuana firsthand, using common sense, to determine whether the weight of cellophane and dryer sheets used to wrap the marijuana weighed less than 5 pounds, and, therefore, whether weight of marijuana totaled at least 25 pounds).

But the testimony of the OSBI chemist and the bricks of marijuana themselves did not comprise the only evidence supporting a conclusion that the marijuana seized from Petitioner's rental car weighed twenty-five pounds or more. At trial, Robinson testified that Petitioner brought the marijuana into the house, weighed it, and with the help of Robinson and Walker, divided the marijuana into nineteen parts. Each of the bricks was then weighed separately. The goal was to make each portion weigh at least two pounds each (TR. 435-436). Simple mathematics demonstrates that 19 bundles of marijuana, each weighing at least 2 pounds before they were packaged, is equal to an amount in excess of the 25-pound limit required to prove trafficking.

### 2. Chain of Custody

Petitioner's challenge to the chain of custody of the marijuana is based on the fact that the boxes of marijuana introduced as evidence during the trial had a Drug Task Force (DTF) number that had been changed from "09-0820-1891" to "09-0820-1890." Scott Goodman, a DTF investigator, testified that he had erroneously labeled the boxes by entering a "1" as the final number when it should have been a "0". Goodman testified that he had corrected the number by marking over the incorrect final number, changing it to "0" (TR. 573–575). The OCCA reviewed Petitioner's challenge to the chain of custody for plain error and determined that "any speculation that tampering or alteration occurred went to the weight of the evidence rather than its admissibility" (Response Ex. 4 at 3). The OCCA's disposition of the issue is neither contrary to, nor an unreasonable application of Supreme Court law.

### 3. Proof of "Knowing" Possession of Marijuana

Petitioner contends that the evidence was insufficient to prove that she "knowingly" possessed marijuana. In support of her contention, Petitioner cites Robinson's initial statement to the police that all the drugs were hers, not Petitioner's, and the fact that none of the marijuana was found in Petitioner's personal luggage. She contends that the prosecution

relied solely on her proximity to the drugs to establish the first element of trafficking.

Under Oklahoma law, when two people occupy a space where drugs are found, possession of those drugs cannot automatically be presumed. *White v. State*, 900 P.2d 982, 986 (Okla. Crim. App. 1995). "However, joint possession can be proven by circumstantial evidence of dominion and control over the thing possessed." *Id.* In this case, the marijuana was discovered in the car Petitioner had rented and was driving. Additionally, Robinson's testimony, as well as that of Walker, connected Petitioner directly to the purchase and transportation of the marijuana.

In reviewing this issue, the OCCA stated:

> Taking the evidence in this case in the light most favorable to the State, we find it was sufficient to prove beyond a reasonable doubt that [Petitioner] was guilty of trafficking in illegal drugs. A rational trier of fact could have found that [Petitioner] knowingly possessed twenty-five pounds or more of marijuana beyond a reasonable doubt

Response, Ex. 4 at 4 (internal citations omitted).

Application of AEDPA's standard of review to the OCCA's disposition of Petitioner's second ground for relief requires this Court to deny habeas relief.

### C.    Ground Three: Admission of Evidence

In her third ground for relief, Petitioner contends that the trial court violated her due process rights by admitting evidence of previous "bad acts." This ground for relief is based on the testimony of Walker and Robinson concerning a previous purchase of marijuana. Walker testified that during the first week of August 2009, she, Robinson and Petitioner had taken a trip from Detroit to Petitioner's home in Arizona. While in Arizona, Petitioner took Walker to the local branch of the TCF Bank where they withdrew $6,000 from an account in Walker's name. Walker had opened the account in Detroit the previous May, with $2,000 Petitioner's fiancé had given her for that purpose. Walker testified that, after the initial deposit, she had never deposited any more money into the account. Walker gave the money she had withdrawn to Petitioner who left and then returned with marijuana. Walker and Robinson broke the marijuana into pieces weighing approximately 2 pounds each, wrapped it, packaged it, put it in boxes, and mailed it to Michigan (TR. 351, 355-357, 432).

State court evidentiary rulings are based on questions of state law and federal courts "may not provide habeas corpus relief . . . unless [those rulings] rendered the trial so fundamentally unfair that a denial of

constitutional rights results." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotations omitted). Thus, to the extent Petitioner's claims in Ground Three rely solely on state law, she fails to state a cognizable claim for habeas relief. Moreover, as set forth below, the admission of the challenged other crimes evidence did not render Petitioner's trial fundamentally unfair.

The OCCA reviewed Petitioner's claim for plain error and determined that no such error existed:

> The testimony that [Petitioner] and her two co-defendants had mailed identically packaged marijuana to her intended destination only weeks prior to the instant offense was admissible under the motive, preparation, plan, and knowledge exceptions to the prohibition on the admission of other crimes evidence. This prior instance of drug possession was very closely connected with the entire transaction. Each crime was merely a part of [Petitioner's] greater plan to avoid detection by using her co-defendants to conceal her illegal activities. As such, the prior instance of possession was probative on the issue of whether [Petitioner] knowingly possessed the contraband in the trunk.
>
> Further, the probative value of the challenged evidence was not substantially outweighed by the danger of unfair prejudice

(Response, Ex. 4 at 4-5) (internal quotations and citations omitted). This Court is, of course, bound by the OCCA's interpretation of Oklahoma law,

including the interpretation of Oklahoma's evidentiary rules. *See e.g.*
*Hawkins v. Mullin*, 291 F.3d 658, 662 (10th Cir. 2002)(stating in habeas
proceedings that a federal court is bound by the state court's
interpretation of its own law). The OCCA's determination of this issue is
neither contrary to, nor an unreasonable application of Supreme Court
law. Moreover, because of the strength of the evidence against
Petitioner, the introduction of the evidence in question did not render her
trial fundamentally unfair.

### D. Ground Four: Jury Instructions

Petitioner contends that the trial court erred in failing to instruct
the jury that, having been convicted of trafficking, she would not be
eligible to earn credits toward an earlier release from incarceration. The
OCCA rejected Petitioner's argument:

> In Proposition IV, we find that [Petitioner] was not
> entitled to an instruction informing the jury that
> she would be ineligible for some institutional
> earned credits if she was convicted of trafficking in
> illegal drugs. The instructions as a whole
> accurately stated the applicable law

(Response, Ex. 4 at 5) (internal citations omitted).

A state habeas petitioner has a heavy burden in attempting to set
aside a state conviction based on an erroneous jury instruction. *Maes v.*

*Thomas*, 46 F.3d 979, 984 (10th Cir. 1995). As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law. *See Neely v. Newton*, 149 F.3d 1074, 1085 (10th Cir. 1998).

In this case, Petitioner failed to demonstrate that she was entitled to an instruction advising the jury that she would be ineligible for earned credits. The absence of the requested jury instruction did not render Petitioner's trial fundamentally unfair.

### E.    Ground Five: Excessive Sentence

Petitioner contends that her sentence was excessive. The OCCA stated that her sentence was within the statutory range and was not so excessive as to "shock the conscience of the Court" (Response, Ex. 4 at 5).

The Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences. *Ewing v. California*, 538 U.S. 11, 20 (2003). The proportionality principle, however, "reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003). *See also United States v. Gillespie*, 452 F.3d 1183, 1190 1191 (10th Cir.

18

2006) (summarizing Supreme Court precedent on the proportionality principle and noting that "the [Supreme] Court has only twice invalidated a sentence under the Eighth Amendment: once in 1910, when the defendant was sentenced to fifteen years in chains and hard labor for falsifying a public document; and most recently in 1983, when the defendant was sentenced to life without parole after committing six nonviolent felonies including writing a bad $100 dollar check") (citations omitted). As the Tenth Circuit has instructed, courts "are reluctant to interfere with the legislative determination of an appropriate sentence range." *Hawkins v. Hargett*, 200 F.3d 1279, 1285 (10th Cir. 1999). Application of the narrow proportionality principle has, therefore, been reserved for the truly extraordinary case involving a sentence grossly disproportionate to the crime of conviction. *Hawkins*, 200 F.3d at 1282. *See also United States v. Angelos*, 433 F.3d 738, 750 (10th Cir. 2006); *United States v. Gurule*, 461 F.3d 1238, 1247 (10th Cir. 2006).

In light of Supreme Court precedent on the disproportionality principle and the fact that Petitioner's sentence is within the statutory range of punishment permitted under Oklahoma law, this Court concludes that Petitioner's sentence is not grossly disproportionate to her crime. *Compare Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) (holding

that a sentence of life without parole is not disproportionate to a first time offender's conviction of possession of cocaine). Petitioner fails to present the extraordinary case needed to establish a violation of her Eighth Amendment rights. The claim raised in Ground Five of the Petition, therefore, should be denied.

###    F.    Ground Six: Cumulative Error

Petitioner claims that cumulative error arising out of the claims raised in Grounds One through Five of the Petition deprived her of a fundamentally fair trial in violation of her due process rights. The OCCA denied the claim stating simply, "In Proposition VI, we find [Petitioner] was not denied a fair trial by cumulative error" (Response, Ex. 4 at 6).

In reviewing a claim of cumulative error, a court may consider only actual errors for purposes of determining whether a due process violation has occurred. *See Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002) ([A] cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."). This Court has reviewed the claims raised in the other grounds for habeas relief and has not found any errors, much less multiple errors that could result in cumulative error. Therefore, this claim is without merit.

## RECOMMENDATION

It is recommended that Petitioner's Petition for Writ of Habeas Corpus, **ECF No. 1**, be **DENIED.**

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by **November 8, 2013**, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on October 22, 2013.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE